JOINER, Judge.
D.G. appeals his delinquency adjudication based on the underlying charge of first-degree sexual abuse of P.R.W., a six-year-old female, a violation of § 13A-6-66, Ala.Code 1975. He was ordered to cooperate with Juvenile Court Services, to complete a sex-offender assessment, and to undergo a psychological evaluation. He was also ordered to maintain no contact with P.R.W.’s family.
D.G. argues that the juvenile court erred because, he says, he was denied the right to cross-examine a State’s witness in violation of the Confrontation Clause of the Sixth Amendment. Specifically, he contends that the juvenile court, which was the trier of fact, was allowed to view a video recording on a DVD of an interview with P.R.W., who was not present at trial for cross-examination, containing her allegations against him.[1] Thus, he argues that his Sixth Amendment rights were violated. Moreover, he argues, the video recording was never authenticated or admitted.[2]
The record indicates that a discussion was held before trial concerning “a joint motion” (April 22, 2010, R. 4) offered by the State and defense, whereby the State had moved for the juvenile court to admit a DVD-format video recording from the Southeast Alabama Child Advocacy Center and D.G. had requested the admission of a VHS-format videotape recording from the school bus, which was the site of the alleged offense, filmed on the alleged date of the offense.[3] The parties agreed to delay *854 the judge’s viewing of the video evidence until after the judge had heard the testimony. The judge agreed and stated that she would notify the parties of the time that she would watch the recordings so that they could be present. The juvenile judge stated that she could then “take them [the DVD and the VHS videotape] into consideration.” (April 22, 2010, R. 5.)
During trial, the State presented the testimony of one witness, the forensic interviewer with the Southeast Alabama Child Advocacy Center who had interviewed P.R.W. He testified that he believed P.R.W. and that he believed that she had been sexually abused.[4] He did not specifically testify as to the allegations made by P.R.W. After the forensic interviewer’s testimony, the State rested and D.G. moved for a judgment of acquittal. The following transpired:
“[Defense counsel]: Your Honor, I am going to — I mean, I know that you’ve got two videos to watch. But I am going to verbally move for an acquittal or a dismissal, as the State has failed to prove a prima facia case.
“THE COURT: Well, not having seen the videos that y’all have both, by agreement, asked me to view, I’m not going to grant that motion at this point.
“[Defense counsel]: I understand.”
(April 22, 2010, R. 15.)
D.G. then presented the testimony of the assistant principal from his and P.R.W.’s school. The assistant principal testified that he had been present on the bus on the date originally cited as the date the offense occurred and that nothing inappropriate had occurred. He stated that when P.R.W.’s mother called to report the allegation, he so informed her. He was later asked to investigate another date and therefore reviewed the pertinent video recordings from the bus. He stated that D.G. and P.R.W. were not on the bus at the same time on either date. He testified that he informed P.R.W.’s mother of his findings and that he was asked to investigate a third date. He testified that he reviewed the video recordings from the bus of the three dates and that P.R.W. and D.G. came into contact only once when D.G. and another student were playing “some type of slapping-the-hand games.” (April 22, 2010, R. 29.) P.R.W. joined in the game while sitting across the aisle from D.G.
He stated that, after P.R.W.’s mother telephoned him, the school took measures to separate D.G. and P.R.W. He was then informed of an allegation that D.G. had made inappropriate contact with P.R.W. during recess. When he investigated that allegation, he determined that D.G. had been absent on the date the alleged contact occurred. He also found no truth in the claim that D.G., who was fourteen years old at the time of the alleged inappropriate contact, had gone to the elementary school halls.
The school-bus driver also testified for the defense and stated that she had not witnessed any misconduct between P.R.W. and D.G. on the bus. She stated that P.R.W. sat two rows behind her on the passenger’s side of the bus and was her “navigator.” (April 22, 2010, R. 45.)
On rebuttal, the State presented the testimony of P.R.W.’s mother, who testified that she had reported the alleged abuse after giving P.R.W. a bath. She testified that she telephoned the school based on statements that P.R.W. had made to her. She stated that P.R.W. had told her that the incidents had occurred on more than one occasion. She also stated that she had *855 informed the school that she was uncertain of the date of this particular allegation.
Thereafter, following the testimony of the defense witnesses and the State’s rebuttal witness, defense counsel made another motion for a judgment of acquittal. Defense counsel argued that the State had failed to prove the element of the intent to gratify the sexual desire of either party. The juvenile judge responded that she had not finished hearing the evidence because she had not yet watched the DVD and videotape. Therefore, the judge postponed her ruling.
After the judge watched the evidence, the juvenile court reconvened, and defense counsel again argued that the State had presented insufficient evidence and that it was unfair to convict based solely on P.R.W.’s statements made on the DVD. He contended that he should be allowed to cross-examine P.R.W.[5] The juvenile court subsequently denied the motion for judgment of acquittal.
D.G. argues on appeal that the DVD was never properly authenticated or deemed admitted into evidence. D.G. did not object at trial to a lack of authentication or admission, however, and therefore this argument is not preserved for review. See Green v. State, 586 So.2d 54, 55 (Ala. Crim.App.1991) (“On appeal, the appellant asserts that this tape was improperly admitted because the prosecution failed to properly authenticate it. Because this issue was not raised below, it is not preserved for our review.”).
D.G. also argues that his Sixth Amendment right to confront his accuser was violated because the DVD was introduced and he was not allowed to cross-examine P.R.W.[6] It is well settled that delinquency proceedings are quasi-criminal in nature and our Juvenile Code requires that a juvenile be afforded the rights and privileges of the Constitution of the United States and the Constitution of Alabama. See § 12-15-213, Ala.Code 1975; Ex parte Vaughn, 495 So.2d 88 (Ala.1986); Driskill v. State, 376 So.2d 678, 679 (Ala.1979); Scott v. State, 374 So.2d 316 (Ala.1979).
We first consider whether D.G. adequately preserved this claim for review. The record indicates that D.G. moved for a judgment of acquittal at the close of the State’s case, and the following exchange occurred:
“[DEFENSE COUNSEL]: Your Honor, I am going to — I mean, I know that you’ve got two videos to watch. But I am going to verbally move for an acquittal or a dismissal, as the State has failed to prove a prima facia case.
“THE COURT: Well, not having seen the videos that y’all have both, by agreement, asked me to view, I’m not going to grant that motion at this point.
“[DEFENSE COUNSEL]: I understand.
*856 “THE COURT: We will set this for another date so that I can come back in and we can do my finding at that time. Let me get a date. I just need to see when I can view the video. I told you I would give y’all an opportunity to be there when I viewed the video.
“And Monday is a state holiday. Tuesday, I have to be in Montgomery. Wednesday, I have traffic court all day. So, I don’t know that I would be able to see it by next Thursday, which is the next juvenile date. I should be able to view it, if not before, on May 3rd. I probably could view it April 30th, that morning. I’m going to go ahead and put that on my calendar.
“So, I will let y’all know right now that I am viewing the video on that Friday. I will do that at 8:00 a.m. I’ll go ahead and put it 8:15, because she might have trouble getting into the courthouse .... ”
(April 22, 2010, R. 15-16.)
At the close of all testimony, but before the juvenile court had reviewed the DVD and videotape, D.G. renewed his motion for a judgment of acquittal, and the juvenile court indicated that it was going to reserve ruling until after it had viewed the DVD and videotape. (April 22, 2010, R. 69-72.) More particularly, the following transpired:
“[DEFENSE COUNSEL]: And I’ll say this, Judge. I didn’t realize that we were going to come back and do that. I would have just saved that motion for that time.
“THE COURT: I think I said I wasn’t going to rule on it right now anyway.
“[DEFENSE COUNSEL]: I understand. I just didn’t know if we were going to have a chance to come back then and make some statements or arguments.
“THE COURT: With that, we’re off the record.”
(April 22, 2010, R. 72.)
When the juvenile court reconvened and viewed the DVD and videotape, defense counsel again argued that the State had presented insufficient evidence and that it was unfair to convict based solely on P.R.W.’s statements made on the DVD because he had not been allowed to cross-examine P.R.W. Specifically, defense counsel argued:
“[DEFENSE COUNSEL]: Your Honor, I think it’s — as well, I would also like to state my position that the State has failed to put on sufficient evidence. I haven’t had any opportunity to cross-examine the victim or witness. I know that the tape was admitted. But I don’t think that alone is sufficient to uphold a conviction for an adjudication of delinquency to my client. I think it’s patently unfair to not allow me the opportunity to cross-examine a witness.”
(May 3, 2010, R. 5.) Under these circumstances, we conclude that D.G. adequately preserved the Confrontation Clause issue for review because it appears that juvenile court did not want to consider any objections until after it had viewed the evidence. See Ex parte Abrams, 3 So.3d 819, 822-23 (Ala.2008) (holding that Abrams’s argument that there was insufficient evidence on which to revoke his probation based on his drug use was preserved because the trial court was clearly aware of the basis of the argument and to hold otherwise “would be to elevate form over substance”). Further, in this case, the argument D.G. presents on appeal was presented to the juvenile court and he received an adverse ruling. See Jordan v. State, 574 So.2d 1024, 1025 (Ala.Crim.App.1990) (holding that claim was not preserved for appellate review where defendant did not *857 first present his argument to the trial court); Harris v. State, 563 So.2d 9, 11 (Ala.Crim.App.1989) (providing that the defendant must first obtain an adverse ruling in order to preserve an issue for appellate review); see also T.D.M. v. State, [Ms. CR-08-0355, June 25, 2010] — So.3d -,-(Ala.Crim.App.2010) (same).
The DVD, State’s Exhibit 1, contains the interview of P.R.W. by the forensic interviewer with the Southeast Alabama Child Advocacy Center. P.R.W. originally denied that anything bad had happened to her on the bus and that anyone had ever touched her “bottom.” She then stated that D.G. had hit her on the back and the shoulder. After being shown a diagram of a female and identifying body parts, she stated that D.G. had touched her “front bottom” and her “back bottom” outside her clothing and that he had told her that her front bottom was a “water hole.” She also stated that she had touched D.G.’s “water hole” briefly outside his clothing, because he had wanted her to do so.
If a child witness is unavailable at trial or the child’s testimony is unavailable by another authorized means, and a defendant has not been allowed to cross-examine the witness previously, a prior out-of-court statement by the witness should not be admitted if it is testimonial. In Styron v. State, 34 So.3d 724, 730-31 (Ala.Crim. App.2009), this court stated:
“In Crawford v. Washington, [541 U.S. 36 (2004) ], the United States Supreme Court held that the admission of a wife’s out-of-court statements to police officers, regarding an incident in which the defendant, her husband, allegedly stabbed the victim, violated the Confrontation Clause. The Supreme Court stated that, regardless of whether an out-of-court statement is deemed reliable by the trial court, an out-of-court statement by a witness that is testimonial is barred under the Sixth Amendment’s Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. at 68, 124 S.Ct. 1354. Although the Supreme Court held that Crawford applied to testimonial statements, it declined to provide a comprehensive definition of testimonial statements, stating merely that ‘[wjhatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.’ 541 U.S. at 68, 124 S.Ct. 1354.
“In Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the United States Supreme Court expounded on what types of statements were testimonial statements:
“ ‘Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.’
“547 U.S. at 822,126 S.Ct. 2266.
“Alabama law authorizes the admission of an out-of-court statement made by a child under the age of 12 under certain circumstances. See § 15-25-31, Ala.Code 1975. Section 15-25-32, Ala. Code 1975, provides:
“ ‘An out-of-court statement may be admitted as provided in Section 15-25-31, if:
*858 “ ‘(1) The child testifies at the proceeding, or testifies by means of video tape deposition as provided by Section 15-25-2, or testifies by means of closed circuit television as is provided in Section 15-25-3, and at the time of such testimony is subject to cross-examination about the out-of-court statements; or
“ ‘(2)a. The child is found by the court to be unavailable to testify on any of these grounds:
“ ‘1. The child’s death;
“‘2. The court finds that there are reasonable grounds to believe that the defendant or someone acting on behalf of the defendant has intentionally removed the child from the jurisdiction of the court;
“ ‘3. The child’s total failure of memory;
“ ‘4. The child’s physical or mental disability;
“‘5. The child’s incompetency, including the child’s inability to communicate about the offense because of fear or a similar reason; or
“‘6. Substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of closed circuit television; and
“ ‘b. The child’s out-of-court statement is shown to the reasonable satisfaction of the court to possess particularized guarantees of trustworthiness.’
“Although the United States Supreme Court’s decision in Crawford effectively abrogated subsection b. of § 15-25-32(2), § 15-25-32 still requires the de-clarant’s unavailability in order to admit an out-of-court statement made by a child under the age of 12.”
Thus, in Styron v. State, supra, this court determined that the circuit court erred by allowing a Department of Human Resources (“DHR”) employee who had interviewed the two child victims of the alleged sexual abuse to testify about statements one of the children had made to her. This child failed to testify at trial and was not available for cross-examination by Styron. The statements made to the DHR employee by the children were testimonial in that they could corroborate statements that the children had made to their aunt. Therefore, the statements from the interview were “closely tied to the continuing criminal investigation of the molestation.” Styron, 34 So.3d at 732. Therefore, Styron’s right to confrontation was violated.
In the present case, the statements made by P.R.W. during the interview that were contained in the DVD were testimonial because they were intended to verify past incidents in order to aid in a criminal investigation. There is no indication in the record that the juvenile court ever determined that P.R.W. was unavailable for one of the enumerated reasons set forth in § 15-25-32(2)a., Ala.Code 1975. Therefore, D.G.’s right to confrontation was denied, and the DVD should not have been allowed into evidence.
Having concluded that the juvenile court erred in admitting the DVD of P.R.W.’s testimony, we must determine whether the error warrants reversal. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (providing that the “harmless error” standard enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) applies to review of Sixth Amendment Confrontation Clause violations). Rule 45, Ala. R.App. P., states:
“No judgment may be reversed or set aside, nor a new trial granted in any ... criminal case on the ground of misdirec *859 tion of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Further, in T.P. v. State, 911 So.2d 1117, 1124 (Ala.Crim.App.2004), this Court discussed the application of the harmless-error analysis to a review of a Confrontation Clause violation:
“In determining whether the error in this case was harmless, we first look to the Supreme Court’s opinion in Crawford v. Washington[, 541 U.S. 86 (2004) ]. In remanding that case to the Washington Supreme Court for further proceedings, it noted that the state appellate court had found the confrontation violation ‘not harmless.’ 541 U.S. at 42 n. 1, 124 S.Ct. at 1359 n. 1. From this, we infer that while Crawford v. Washington fundamentally alters the way we analyze claims of error under the Confrontation Clause, the opinion does not change the way we evaluate the effect of any such error. Accordingly, we must now determine whether the constitutional violation in this case is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see also Perkins v. State, 897 So.2d [457,] 465 [ (Ala.Crim.App.2004) ]; Smith v. State, 898 So.2d [907,] 918 [ (Ala.Crim.App. 2004) ].”
The State contends that, even if admission of the videotaped interview was in error, the error was harmless and does not require reversal of D.G.’s conviction. Given that there was no other evidence of first-degree sexual abuse of P.R.W. by D.G. besides the interview of P.R.W. recorded on the DVD, we cannot say that the admission of the DVD was harmless beyond a reasonable doubt. Accordingly, because D.G.’s constitutional right to confront an adverse witness was violated by the admission of the recorded interview of P.R.W., and the erroneous admission did not amount to harmless error, we reverse D.G.’s adjudication of delinquency and remand for a new trial.[7]
REVERSED AND REMANDED.
WELCH, P.J., and KELLUM and BURKE, JJ., concur.
WTNDOM, J., dissents, with opinion.

. We note that a juvenile-delinquency proceeding is quasi-criminal in nature, and a juvenile charged with a delinquent act is "accorded the rights and privileges afforded by the Constitution of the United States and the Constitution of Alabama of 1901.” § 12-15-213, Ala.Code 1975. See Driskill v. State, 376 So.2d 678, 679 (Ala. 1979).

. D.G. also argues that the juvenile court erred in adjudicating him delinquent because, he says, the State failed to prove beyond a reasonable doubt that venue in Houston County was proper. (D.G.'s brief, Issue II, pp. 23-24.) The record, however, discloses that D.G.’s trial counsel stipulated to venue.

.According to the bus driver and assistant principal at the school attended by D.G. and P.R.W., P.R.W.’s mother specified the date of the offense as the same date she telephoned both of these witnesses. The assistant principal testified that he was later informed that P.R.W.’s mother had altered the date. P.R.W.’s mother testified that she never specified a date during her telephone conversations with these witnesses.

. D.G. does not contend, on appeal, that the interviewer’s testimony was improper.

. D.G. also argued at trial that the State failed to prove that the offense occurred on the date specified in the indictment. However, D.G. does not raise the issue of a fatal variance or faulty indictment on appeal, and the date of the offense is not a material element of first-degree sexual abuse. Rule 13.2(d), Ala. R.Crim. P.

. “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.”
U.S. Const, amend. VI (emphasis added).

. On appeal, D.G. also challenges the sufficiency of the evidence. Because this Court is reversing on the Confrontation Clause claim, no discussion of the sufficiency-of-evidence claim is necessary.