**KEHLI M. UBILES, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2014-0084
Supreme Court of the Virgin Islands
May 25, 2017

573

575

VANESSA-NOLA PRATT, ESQ., The V-Law Group, PLLC, Washington, DC, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., IAN S.A. CLEMENT, ESQ., Assistant Attorneys General, Virgin Islands Department of Justice, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 25, 2017)

SWAN, *Associate Justice.* Appellant, Kehli M. Ubiles, seeks reversal of his convictions for driving under the influence of an intoxicating liquor and driving with a prohibited blood alcohol content. Ubiles argues, first, that his Sixth Amendment right to confront witnesses against him was violated because the People failed to present at trial the person responsible for calibrating the breath test machine and, second, that there was insufficient evidence to prove beyond a reasonable doubt that he "operated or was in actual physical control of a motor vehicle along a public highway." For the reasons elucidated below, both convictions are affirmed.

## I. FACTS AND PROCEDURAL HISTORY

On January 15, 2014, the People of the Virgin Islands filed an information charging Ubiles with driving while intoxicated, driving with an illegal blood-alcohol level, and driving without a license. An amended information was subsequently filed on September 17, 2014, charging two counts: Count One — driving under the influence of an intoxicating liquor (20 V.I.C. § 493(a)(1)) and Count Two — driving with an illegal blood-alcohol level (20 V.I.C. § 493(a)(2)). Both charges emanated from a motor vehicle accident that occurred on December 23, 2013, on the

island of St. Thomas. A jury trial was held on September 18, 2014, and Ubiles was found guilty of both charges. A sentencing hearing was held on October 6, 2014, and a judgment was entered on November 24, 2014. This appeal ensued.

Officer Charles was the only witness who testified for the People. Officer Charles was, at the time she investigated the accident, a traffic officer employed with the Virgin Islands Police Department. She had been a police officer since July of 2010 and was assigned to the Traffic Investigations Bureau with responsibility for investigating traffic violations, traffic accidents, and potential incidents of people driving while intoxicated. At the time of trial, Officer Charles had four years experience investigating traffic accidents. She had received training on identifying people who may be driving while intoxicated and training in administering field sobriety tests.

On December 23, 2013, Officer Charles was dispatched to an accident in Estate Contant on St. Thomas where two persons were having a verbal altercation, with one of the persons possibly being intoxicated. Upon arrival, the officer saw two vehicles on a hillside with two males "standing in the roadway." One male, who had dreadlocks, was pacing the roadway and acting boisterously. Two photographs depicting the scene were jointly admitted as Exhibit 1.

Officer Charles interviewed Ubiles while investigating the accident. In conversing with Ubiles, she smelled a "strong odor of alcohol" emanating from him. Ubiles was asked several times to present the vehicle registration and insurance documents. However, he responded that he had called the vehicle owner to obtain the documents. Ubiles also failed to provide a copy of his driver's license but stated that his name was "Masai Yblies." Ubiles was "very loud and argumentative" and repeatedly accused Officer Charles of not listening to him and only listening to the other driver. Ubiles then entered his vehicle, started the engine, and attempted to drive away.

Exhibit 2 was entered into evidence. It was a photograph of the interior center console of Ubiles' vehicle. The interior of the vehicle smelled of alcohol, and there were several cups in the center console. The cups were small and had stir straws commonly used to stir cocktails and other alcoholic beverages.

Considering Ubiles' conduct and demeanor, Officer Charles transported Ubiles to the police station to be administered field sobriety

577

tests and a "breathalyzer."[1] Officer Charles conducted three separate field sobriety tests. First, she looked for involuntary jerking of Ubiles' eyes by conducting the horizontal gaze nystagmus test. However, when intoxicated, the eyes will jerk as they move from left to right. The next test, the walk and turn test, requires that the person stand with his arms at his sides and his left foot on a line drawn on the flat ground. The person is required to hold this position for the remainder of the instructions and is then instructed to take nine steps such that, on the next step, the opposite foot is placed on the ground with the heel touching the toe of the foot already on the ground. The person is also required to count aloud each step out loud. After nine steps, the person must turn around and repeat the process, all while keeping his arms at his sides. The third test, the one-leg stand test, requires that the person stand on one foot with the other foot approximately six inches off the ground. While holding this pose, the person must count aloud for thirty seconds in the manner of "1001, 1002, 1003, . . . [1030]."

Ubiles failed the horizontal gaze nystagmus test because his eyes presented involuntary jerking prior to his gaze reaching a 45-degree angle on either side. He also "presented nystagmus at maximum deviation." Officer Charles demonstrated the walk and turn test. Ubiles misstepped several times by not placing his feet "heel to toe," stepping off the line, and raising his arms. During the one-leg stand test, Ubiles used the assistance of stationary objects to maintain his balance, swayed from side to side, and raised his arms. His actions constituted a failure of the field sobriety tests.

Due to Ubiles' failure, he was given a breathalyzer test. The specific brand of the machine used was "Intoximeter," and Intoximeter manufactures breath test machines that measure blood-alcohol level by sampling a person's breath. Officer Charles was trained in the operation of the machine and knew how to administer the breath test. The printout of the test results was admitted as People's Exhibit 4 without objection from Ubiles and later as a part of Defendant's Exhibit 11.

At the probable cause hearing, it had been discovered that Ubiles had given the police an incorrect name. Nonetheless, given Ubiles' dreadlocks

---

[1] While Breathalyzer refers to a specific brand of blood-alcohol breath test machine, the term was used colloquially throughout the trial as a generic reference to such testing equipment.

and other distinguishing physical features, Officer Charles identified Ubiles as the person on whom she administered the breathalyzer. Ubiles' test results revealed he had a blood-alcohol content of .218. Therefore, the officer concluded that Ubiles was "heavily under the influence of some kind of intoxicating liquor."

On cross-examination at trial, defense counsel thoroughly challenged the veracity of the officer's testimony. Officer Charles omitted from her police report several facts that were probative on the issue of Ubiles' state of intoxication. For example, she failed to state that Ubiles was staggering, that he had slurred speech, that he was incoherent, and that he was leaning against the vehicle to maintain balance. Officer Charles was also cross-examined as to when exactly Ubiles obtained the vehicle, which he did not own, and as to the contents of the cups inside the vehicle. She did not conduct a test on the contents of the cups but reiterated that they raised the suspicion that they contained alcohol due to the type of the cups and the types of straws within them. Additionally, she clarified that Ubiles was not arrested because of the contents of the cups. Officer Charles further explicated that, once a person consumes alcohol, there is a distinct odor that emanates from the person's breath and/or pores. Officer Charles was also cross-examined about Ubiles' signature on the consent form he signed. His name is illegible after the first three letters, K-E-H, which did not match the name Ubiles gave when he was taken into custody.

Officer Charles was further cross-examined on errors in her arresting affidavit. For example, in the opening sentence, it states "I, Masai Ublies," and it also indicates that the name of the arresting officer was "Masai Ublies." She maintained that she prepared the affidavit and admitted it was her mistake in incorrectly placing Ubiles' name instead of her own name on the affidavit. Likewise, the inconsistency between the time stamp on the breathalyzer results and the time of the signing of the consent form by Ubiles was addressed. Additionally, the photo of the scene was reviewed, and it appeared that the photo depicted the road where the accident occurred as flat terrain. However, the officer confirmed that, despite appearances, the area is not as flat as required for administering a field sobriety test. Defense counsel also cross-examined Officer Charles concerning whether she was aware of any physiological causes of nystagmus. She admitted having no knowledge on this topic.

As to the nystagmus test, the officer admitted that no compass or ruler or other measuring implement is used in administering this test. However, she expounded that, using her finger as a focal point, she begins with her finger at the center of the person's face, which approximates a 45-degree angle for the human eye to look at, and she moves it out to the end of the person's shoulder, which approximates a 45-degree angle to the opposite side. Officer Charles also explained that, when intoxicated, the jerking or jumping of the eye is involuntary and cannot be controlled.

Officer Charles has never been trained on the internal operations of the breath test machine and does not know how it works or how to fix it. She is not the person responsible for the machine's maintenance and calibration. When asked if she calibrated the machine, she responded that the machine "self-calibrat[es]." She did not know if the machine was capable of providing test results while malfunctioning. She further testified that Lieutenant Rosalind Jarvis is responsible for the machine's maintenance and calibration. However, she also stated that she had no knowledge about the extent of Lieutenant Jarvis' training regarding the machine, and Ubiles ultimately did not request that Lieutenant Jarvis be produced as a witness. Officer Charles also testified that she herself has never seen the operator's manual for the machine.

Defense counsel canvassed a plethora of potential factors that could affect the test results. Indeed, he offered into evidence a bottle of mouthwash that contained 26.9% alcohol. The officer readily admitted that she did not inquire of Ubiles regarding each thing that had the potential to affect either the field sobriety test or the breathalyzer. Officer Charles further asserted that she asked Ubiles if he was able to perform each portion of the field sobriety test, and he affirmed he was so able. Officer Charles was also cross-examined on the statements of Ubiles contained in the police report. It was reported that Ubiles stated, "I coming down the corner, he hit me. I don't know, I was stand still, he come around and broop [sic]."

At the close of the People's case, Ubiles moved for a judgment of acquittal, which was denied. Ubiles moved for acquittal because, *inter alia*, the prosecution failed to present Lieutenant Jarvis, "the person who is responsible for the intox breathalyzer machine. They deprived [ ] Ubiles of his right to confront Lieutenant Jarvis." In denying the motion, the trial judge relied on the fact that no objection to the foundation of the

breath test results was posited and that defense counsel had stated there was no objection to the admission of the results.

## II. JURISDICTION

This Court has jurisdiction over all appeals arising from a final judgment of the Superior Court. 4 V.I.C. § 32(a). In a criminal matter, the written judgment embodying the adjudication of guilt and sentence imposed constitutes a final judgment. *Percival v. People*, 62 V.I. 477, 483 (V.I. 2015) (citing *Cascen v. People*, 60 V.I. 392, 400 (V.I. 2014); *Williams v. People* (*Williams IV*), 58 V.I. 341, 345 (V.I. 2013)). Therefore, this Court has jurisdiction to hear this appeal timely filed on December 23, 2014.

## III. STANDARD OF REVIEW

Ubiles presents two issues for consideration. First, he asserts that his Sixth Amendment right to confront witnesses against him was violated because Lieutenant Jarvis was not called to testify, and she is responsible for the maintenance and calibration of the breathalyzer machine.[2] Typically, evidentiary rulings are reviewed for abuse of discretion, unless the ruling involves application of a legal precept, which then requires this Court to exercise plenary review. *Rawlins v. People*, 61 V.I. 593, 606 (V.I. 2014).[3]

---

[2] The Sixth Amendment to the United States Constitution is applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act, codified at 48 U.S.C. § 1561. *Cascen*, 60 V.I. at 410 n.6; *Blyden v. People*, 53 V.I. 637, 653 n.9 (V.I. 2010); *Rivera v. People*, 53 V.I. 589, 592 n.3 (V.I. 2010); *see also Melendez v. People*, 56 V.I. 244, 251 n.5 (V.I. 2012) ("The Bill of Rights of the Constitution of the United States, contained in the Revised Organic Act of 1954 and statutorily conferred by Congress, 'expresses the congressional intention to make the federal Constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory.' " (quoting *In re Brown*, 439 F.2d 47, 8 V.I. 313 (3d Cir. 1971))); *Browne v. People*, 56 V.I. 207, 217 n.6 (V.I. 2012) (same).

[3] *See also Cascen*, 60 V.I. at 409-10 ("We review the Superior Court's limitation of cross-examination only for an abuse of discretion, *United States v. Ellis*, 156 F.3d 493, 498 (3d Cir. 1998)), but we apply plenary review to [a defendant's] claim that these restrictions violated his constitutional right to confront a witness against him. *Fontaine v. People*, 59 V.I. 640, 651 (V.I. 2013)."); *Thomas v. People*, 60 V.I. 183, 194 (V.I. 2013) (" 'The standard of review for challenges under the Sixth Amendment's Confrontation Clause is plenary.' " (quoting *Latalladi v. People*, 51 V.I. 137, 141 (V.I. 2009))); *Francis v. People*, 54 V.I. 313, 317 (V.I. 2010); *Blyden*, 53 V.I. at 647; *Rivera v. People*, 53 V.I. 589, 592 (V.I. 2010).

However, Rules 4(h) and 22(m) of this Court require that a party "fairly present" all issues, whether legal, procedural, evidentiary, or otherwise, to the trial court or risk forfeiting or waiving a claim of error on appeal for failing to do so. *Percival*, 62 V.I. at 486 (citing V.I.S.Ct.R. 4(h); V.I.S.Ct.R. 22(m)). Because defense counsel stated that there was no objection to the admission of the breath test results and he later introduced the results as a defense exhibit, this Court must first determine if this issue was fairly presented to the trial court and thus preserved for appeal or whether the issue was forfeited or waived. *Chinnery v. People*, 55 V.I. 508, 514 (V.I. 2011).

■ Second, Ubiles asserts a challenge to the sufficiency of the evidence to prove that he "was in actual physical control of a motor vehicle along a public highway." A challenge to the sufficiency of the evidence is reviewed *de novo*, and this Court applies the same standard as the trial court. *Ramirez v. People*, 56 V.I. 409, 416-17 (V.I. 2012). Sufficiency of the evidence review is highly deferential to the jury's verdict and "formidable[,] and 'defendants challenging convictions for insufficiency of evidence face an uphill battle on appeal.' " *United States v. Santos-Rivera*, 726 F.3d 17, 23 (1st Cir. 2013) (citations omitted); *Augustine v. People*, 55 V.I. 678, 684 (2011) (citing *Stevens v. People*, 52 V.I. 294, 304 (2009)). A conviction will be affirmed if there is substantial evidence supporting each essential element of the crime beyond a reasonable doubt. *Augustine*, 55 V.I. at 683 (citing *Stevens*, 52 V.I. at 304); *Williams v. People* (*Williams II*), 55 V.I. 721, 734-35 (V.I. 2011) (citing *United States v. Carbo*, 572 F.3d 112, 113 (3d Cir. 2009)); *United States v. DiRosa*, 761 F.3d 144, 150 (1st Cir. 2014).

## IV. DISCUSSION

### A. Confrontation Clause

Ubiles argues that the People submitted the breath test results without providing a necessary witness, Lt. Jarvis, to allow for complete cross-examination. *Cascen*, 60 V.I. at 412 ("However, even if the Superior Court did not err in holding that the forms were admissible pursuant to Stout's testimony, Cascen was still entitled to cross-examine Stout on the reliability of the process used to create the records, whether any potential bias or impropriety affected her testimony, or any other circumstances that may have impacted the reliability of the forms." (citations omitted)); *see*

*Davis v. Alaska*, 415 U.S. 308, 317-318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (witness bias "is always relevant as discrediting the witness and affecting the weight of his testimony"); *cf. United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988). However, the United States Supreme Court has never explicitly addressed whether inspection, maintenance, or calibration records fall under the Sixth Amendment's confrontation requirements. Instead, the Supreme Court only stated in dicta that "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (majority opinion authored by Scalia, J.); *but see Ohio v. Clark*, 135 S. Ct. 2173, 2184, 192 L. Ed. 2d 306 (2015) (Scalia, J. concurring) ("Dicta on legal points, however, can do harm, because though they are not binding they can mislead."). It is not necessary for us — in this case — to decide whether failure to produce Lt. Jarvis has the same constitutional infirmity as has been found in the presentation of testimony from pass-through or "surrogate" experts whose evidence essentially conveys the results of out-of-court work of other, non-present actors because the issue was not properly presented in the trial court and, as discussed below, has been waived.

### 1. Was This Issue Fairly Presented?

■ "[A] party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal." *Percival*, 62 V.I. at 486; *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965) ("In determining the sufficiency of objections we have applied the general principle that an objection which is ample and timely to bring the alleged . . . error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to . . . preserve the claim for review here."); *Gov't of the V.I. v. Joseph*, 964 F.2d 1380, 1384, 27 V.I. 389 (3d Cir. 1992). To determine whether an issue was fairly presented and preserved for appeal, the court "disregards form and relies upon substance." *State v. Balderama*, 2004-NMSC 008, 135 N.M. 329, 88 P.3d 845, 850 (2004). Therefore, we must consider whether, in substance, the acts of Ubiles' counsel in 1) failing to object to the admission of the breath test results into evidence; 2) affirmatively stating that there was no objection to the admission of this evidence; 3) introducing the breath test

results into evidence; and 4) then later moving for acquittal basing such motion, at least in part, on a failure to present in court the person responsible for the maintenance and calibration of the breath test machine, fairly presented Ubiles' Confrontation Clause violation and preserved this claimed error for consideration on appeal.

■ Admittedly, the "fairly presented" standard is a low threshold. *E.g., Percival*, 62 V.I. at 485 ("Under this standard, moving for a judgment of acquittal once — whether it is after the People rests, after the close of evidence, or after the jury returns a verdict — is sufficient to fairly present the issue to the Superior Court . . . ."); *Woodrup v. People*, 63 V.I. 696, 712 (V.I. 2015) (An issue was preserved "under Supreme Court Rule 4(h) by filing a pretrial motion to suppress [specified evidence]. Thus, a contemporaneous objection at trial was unnecessary to preserve this issue . . . ."); *see, e.g., Balzac v. Porto Rico*, 258 U.S. 298, 304, 42 S. Ct. 343, 66 L. Ed. 627 (1922) (noting that the claimed error "merely averred that the defendant had been denied his right as an American citizen under the Sixth Amendment to the Constitution" and finding that, while informal, this was sufficient to preserve the issue for appeal because "the record disclose[d] the real nature of the controversy" and the issue presented on appeal was clearly addressed to this question); *Joseph*, 964 F.2d at 1384. However, this standard is not some formalistic requirement whereby an issue is fairly presented simply by raising it any time prior to entry of final judgment, and an issue must be presented in such a manner as to give the trial court the opportunity to consider, review, and address the argument in order to ensure that an adequate record of both law and fact is established so that an appellate court may make an informed decision. *Simpson v. Golden*, 56 V.I. 272, 280-81 (V.I. 2012); *United States v. O'Neill*, 116 F.3d 245, 247 (7th Cir. 1997) (noting that formalistic language and style are not needed to preserve an issue for consideration on appeal); *cf. United States v. Jake*, 281 F.3d 123, 130 (3d Cir. 2002) (holding that the purpose of the objection requirement is to alert the trial court to the issue). This reduces issues for appeal by allowing the opportunity to address any asserted error and correct it at the trial level. *Simpson*, 56 V.I. at 280-81; *see also Henry v. Mississippi*, 379 U.S. 443, 448, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965) (noting that the contemporaneous objection rule works to "immediately appris[e] the trial judge of the objection, . . . giv[ing] the court the opportunity to conduct the trial without using the tainted evidence").

Ubiles did not raise his Confrontation Clause claim in a motion to suppress or in a motion *in limine* to preclude admission of the evidence at trial. Likewise, he did not object to the initial admission of the breath test. Importantly, he later introduced the breath test results as a defense exhibit. It was only after the challenged evidence was admitted into evidence without objection and after the People closed their case that any argument as to the unconstitutionality of this evidence was interposed. Under this procedural posture, we cannot find that Ubiles' objection was fairly presented at the trial level. Specifically, in rejecting this argument, the trial court noted that the test results had been admitted without objection. Therefore, based on the stated lack of objection, the trial court did not fully develop the factual and legal record necessary for this Court to effectively consider the issue and relied upon the actions of Ubiles in rejecting this argument. *Shepard v. Chavez*, No. 2:10-cv-3249, 2012 U.S. Dist. LEXIS 130303, at *24 (E.D. Cal. Sept. 12, 2012) ("An attorney's ignorance or inadvertence 'is not "cause" [for excusing procedural default] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must "bear the risk of attorney error." ' " (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991))); *cf. Martinez v. Ryan*, 566 U.S. 1, 9, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) (holding that, under habeas review, ineffective assistance of counsel precludes a finding of waiver); *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

## 2. Was This Issue Forfeited or Waived?

█ The next step, then, is to determine whether this issue was merely forfeited or whether it was waived. *See Murrell v. People*, 54 V.I. 338, 346, 361-62 (V.I. 2010) (plain error review will be available where a defendant merely forfeits an argument by inaction, but not if the defendant has affirmatively waived the issue). This determination requires that the Court primarily consider whether a defendant "was aware of the relinquished or abandoned right." *Pickering v. People*, 64 V.I. 365, 365 (V.I. 2016) (citation and internal quotation marks omitted). A defendant's failure to object typically results only in forfeiture, allowing this Court discretion to notice the error. *Id.*

█ In contrast, active inducement, acquiescence, or other affirmative acts indicate intentional waiver of an issue or right. *Id.*; *Johnson v. Zerbst*,

304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.").[4] The determination of waiver is case-specific and depends upon the surrounding facts and circumstances of the case including the background, experience, and conduct of a defendant. *Zerbst*, 304 U.S. at 464; *Fay v. Noia*, 372 U.S. 391, 440, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963) ("Each case must stand on its facts."), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992); *e.g., United States v. Wells*, 519 U.S. 482, 488-89, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997) (discussing the invited error doctrine in the context of whether an issue presented on writ of certiorari will be addressed on the merits and outlining the considerations as to why the issue "was 'pressed [in] or passed on' by the [lower court]").

██ Barring ineffective assistance of counsel, a criminal defendant's attorney may waive most constitutional rights on behalf of a client. *See Percival*, 62 V.I. at 490 n.3 (stating such with regards to waiving a defendant's right to confront a witness against him); *Pickering*, 64 V.I. at 365 (same, but with regards to waiving a defendant's double jeopardy rights).[5] A defendant's attorney " 'manages the lawsuit and has the final

---

[4] *E.g., Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 414 (V.I. 2016) ("Antilles School's own request that the Superior Court change its proposed verdict form has made it effectively impossible for this Court to address its claim that it was prejudiced by the Superior Court's duplicative jury instruction, thus providing us with little choice but to affirm. . . . Accordingly, because Antilles School's own conduct makes it impossible to review this issue, we conclude that the Superior Court's error in providing the jury with a duplicative instruction did not harm Antilles School's substantial rights so as to warrant a new trial."); *Fontaine*, 56 V.I. at 584 ("[T]he invited error doctrine precludes errors stemming from erroneous jury instructions proposed by a defendant's counsel from forming the basis for reversal." (citation omitted)).

[5] *See also Smith v. Illinois*, 390 U.S. 129, 131, 88 S. Ct. 748, 19 L. Ed. 2d 956 (1967) (holding that, absent waiver by the defendant, a denial of cross-examination is a "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it" (citation and internal quotation marks omitted)); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966) ("There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." (citations and internal quotation marks omitted)); *Whitus*, 333 F.2d at 501 ("A choice made by counsel not participated in by the petitioner does not automatically bar relief."); *but see Henry*, 379 U.S. at 451-52; *Whitus v. Balkcom*, 333 F.2d 496 (5th Cir. 1964) (an example of exceptional circumstances where a defendant's deliberate choice not to raise an objection is still not a waiver of that objection); *Fay*, 372 U.S. at 440 (in the context of a petition for habeas corpus, the Supreme

say in all but a few matters of trial strategy.' " *Shepard*, 2012 U.S. Dist. LEXIS 130303, at *91 (quoting *Faretta v. California*, 422 U.S. 806, 812, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). Indeed, " '[o]ne of the surest ways for counsel to lose a law-suit is to permit his client to run the trial.' " *Id.* (quoting *Kuhl v. United States*, 370 F.2d 20, 27 (9th Cir. 1966)). Therefore, when a defendant, either on his own or through counsel, "induces or encourages the Superior Court to commit an error, the invited error doctrine precludes that error from forming the basis for reversal on direct appeal." *Williams v. People (Williams V)*, 59 V.I. 1024, 1033 (V.I. 2013); *see also United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993) ("The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit." (citations and internal quotation marks omitted)).

 Affirmative representations, such as stating that a party has no objection to a piece of evidence, are actions falling squarely within the invited error doctrine because such a representation assures the trial court that there is no issue to consider and encourages the trial court to proceed without further examination. *Williams V*, 59 V.I. at 1033 (Recognizing a challenge under such circumstances would encourage gamesmanship at trial by encouraging parties to state that there is no objection and then claim error on appeal.).[6] To condone such tactics "would seriously undermine confidence in the integrity of the courts." *Id.* (citation omitted).

In *Henry v. State*, 198 So. 2d 213, 215 (Miss. 1967), the Mississippi Supreme Court found that a defendant's counsel had invited the error in

Court found the defendant's deliberate choice not to appeal his original conviction and sentence to be an instance of exceptional circumstances where review was not foreclosed despite the deliberate choice.

[6] *See also Yusuf v. Hamed*, 59 V.I. 841, 851 n.5 (2013) (noting that appellants had waived any argument based on the admission of a piece of evidence because they failed to object on the ground later advanced on appeal and noting that this error had been invited by appellants when they informed the trial court of their intention to offer the same piece of evidence but without any redactions); *Potter v. People*, 56 V.I. 779, 793-94 (V.I. 2012) ("[W]e interpret the statement by Potter's counsel that he had a solution as an acquiescence and, as such, even if the trial court did err in its handling of the demonstrations before the jury, there would be no basis for reversal."); *Duggins v. People*, 56 V.I. 295, 308-09 (V.I. 2012) ("[W]e note that Duggins's counsel actually solicited all of this evidence himself from one of the People's witnesses. Thus, because Duggins's counsel invited the error by eliciting the testimony in the first place, Duggins has waived any argument based on that evidence.").

an almost factually identical situation. In that case, an officer had testified as to what he observed during a search without a warrant. Defense counsel thoroughly cross-examined the witness, bringing out any defects in testimony. Then, after the state rested, defense counsel made a motion for a judgment of acquittal arguing that the evidence relied upon had been illegally obtained in violation of the Due Process Clause. The court held "that the defendant . . . acting through his attorneys, deliberately intended to bypass any objection the defendant had to the searching of his automobile by the officer." *Id.* at 218.

█ Unquestionably, Ubiles invited the admission of the breath test results into evidence through counsel, who had the authority to waive the right to cross-examination, thus waiving the issue and precluding on appeal consideration of whether the failure to present at trial the person responsible for calibrating and maintaining the breath test machine violated Ubiles' Confrontation Clause rights. The reason for this finding of waiver is not that the documents in question were or were not testimonial. Today's holding is premised on the fact that Ubiles' stipulation removed the need to consider any of the very questions he now complains he was denied the opportunity to ask. When one stipulates to the admission of scientific testing results, this stipulation eliminates the need to establish the reliability and accuracy of the results. Therefore, as explained in more detail below, Ubiles' stipulation invited the prosecution to refrain from producing Lt. Jarvis, whose testimony would primarily have gone to the reliability and accuracy of the operation of the breath test machine, questions Ubiles' stipulation removed from consideration.[7] *See Percival*, 62 V.I. at 490 & n.3 (explaining that the defendant waived his

---

[7] We note that the cases cited by the Chief Justice holding waiver inappropriate are distinguishable. In *D.G. v. State*, 76 So. 3d 852 (Ala. Crim. App. 2011), the court held that the defendant's stipulation to the introduction of video footage during a juvenile delinquency hearing did not waive his later challenge under the Confrontation Clause. *Id.* at 856. The difference between *D.G.* and this case, however, is that in *D.G.*, the lower court "did not want to consider any objections *until after it had viewed the evidence*," whereas in this case, objections were solicited *prior to* admission of the disputed evidence. *Id.* at 856 (emphasis added). In *People v. Osio*, No. H026953, 2005 Cal. App. Unpub. LEXIS 4573 (Cal. Ct. App. May 25, 2005) (unpublished), the court held that the defendant's failure to object to the introduction of evidence during a jury trial did not waive his later challenge under the Confrontation Clause. *Id.* 2005 Cal. App. Unpub. LEXIS 4573. The court explained that waiver was inappropriate because the defendant could not be expected to anticipate the then "new rule" established in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). *Id.* 2005 Cal. App. Unpub. LEXIS 4573. In contrast, in this case, Ubiles's

Confrontation Clause rights by stipulating to the admission of absence-of-entry forms demonstrating that he did not have a license to possess a firearm). As one former Virgin Islands jurist admonished,

> In order to decide this case in an impartial and enlightened manner, this Court called upon counsel to assist it by submitting in writing, an exposition of the legal position each party urged the Court to adopt and citation of the authorities upon which each party relied as the foundation for such legal position. The very purpose of the order has been defeated by plaintiff's failure to comply and the broad exposure of the law which is so necessary to judicial determination has been curtailed.

*Phaire v. Phaire*, 17 V.I. 236, 239 (V.I. Super. Ct. 1981). Here, Ubiles' stipulation created the same problem; the stipulation resulted in a lack of consideration and argument on the very point he now wants to raise on appeal, putting the prosecution and this Court at an unfair disadvantage. *See Gov't of the V.I. v. Connor*, 60 V.I. 597, 604 (V.I. 2014) (noting that "independent decisions of lower courts will improve the quality of appellate decisions." (citations and internal quotation marks omitted)). Therefore, this Court declines to further consider Ubiles' first issue presented because he waived his right of confrontation.[8]

---

ability to anticipate forthcoming precedent is not at issue because he relies on case law arising well before his September 2014 trial. In *People ex rel R.A.S.*, 111 P.3d 487 (Colo. Ct. App. 2004), the court held that a defendant's stipulation to the incompetency of the alleged child victim during a juvenile delinquency hearing did not waive his later challenge under the Confrontation Clause. *Id.* at 491. The court explained that the defendant's stipulation did not reach the constitutional issue and noted, as in *Osio*, that the "new inquiry" established in *Crawford* arose after the underlying proceeding had taken place. *Id.* at 489-90.

[8] The Court notes that the trial court retained discretion to reconsider its ruling to either admit in or exclude from evidence the test results once Ubiles asserted a Confrontation Clause violation in his motion for acquittal and could have allowed the People to reopen their case to present the proper witness. *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 609 (2012) ("[S]o long as the Superior Court possesses the authority to issue an order granting or denying relief, it unquestionably possesses the authority to alter its decision prior to entry of judgment."); *see also Beck v. Alabama*, 447 U.S. 625, 632 n.6, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980) (determining an issue had been fairly presented because it had been considered by an intervening appellate court); *Henry*, 379 U.S. at 448-49 (even after the close of the evidence, "the trial judge could have called for elaboration of the . . . argument and, if persuaded, could have stricken the tainted testimony or have taken other appropriate corrective action. . . . In these circumstances, the delay . . . in presenting the objection cannot be said to have frustrated the State's interest in avoiding delay and waste of time in the disposition of the case."); *cf.*

## B. Sufficiency of the Evidence

▇ Ubiles was convicted of two crimes, but before discussing whether there was sufficient evidence supporting the challenged elements, the elements of each crime should be considered, as any evidentiary analysis is necessarily framed by the elements being challenged. The first conviction was for "Driving Under the Influence," proscribed by 20 V.I.C. § 493(a)(1). The enacting clause, the clause that defines the substantive offense, in this case subsection 493(a)(1), is the beginning of the analysis when determining the elements of a crime. "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (quoting *In re Reynolds*, 60 V.I. 330, 334 (V.I. 2013)). This canon of interpretation exists because the Legislature is presumed to have expressed its intent through the ordinary meaning of the language of the statute. *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014); *Bryan v. Fawkes*, 61 V.I. 416, 462 (V.I. 2014); *Rohn v. People*, 57 V.I. 637, 646 n.6 (V.I. 2012); *Murrell*, 54 V.I. at 352; *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).

▇ We are to take the plain language as an accurate reflection of the legislative intent underlying the statute and are to give effect to all the words of the statute, if reasonably possible, unless to do so would undermine the statute's purpose. *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009); *see also In re Visteon Corp.*, 612 F.3d 210, 226 (3d Cir. 2010). In ascertaining the plain meaning of the words in the statute, we apply any specific definitions that are statutorily prescribed. When no statutory definition is provided, words that have an accumulated legal meaning will be given that meaning, and other words will be given their common, "dictionary," meaning. *United States v. Wells*, 519 U.S. 482, 491, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997); *see also, e.g., Mahabir v. Heirs of George*, 63 V.I. 651, 660 (V.I. 2015); *Cascen v. People*, 60 V.I. 392, 403

---

*Herndon v. Georgia*, 295 U.S. 441, 443, 55 S. Ct. 794, 79 L. Ed. 1530 (1935) ("The long-established general rule is that the attempt, to raise a federal question after judgment, upon a petition for rehearing, comes too late, unless the court actually entertains the question and decides it."). Because the trial court declined to exercise its discretion in this manner, we cannot conclude the Confrontation Clause issue under consideration was fairly presented.

(V.I. 2014); *Ward v. People*, 58 V.I. 277, 283-84 (V.I. 2013); 1 V.I.C. § 42. We also draw meaning from context, structure, placement, and other linguistic indicators in the statutes themselves. *Wells*, 519 U.S. at 491.

### 1. Sufficiency of the Evidence: Driving Under the Influence

Subsection 493(a)(1) of title 20 of the Virgin Islands Code makes it

> unlawful for any person who is under the influence of an intoxicating liquor or a controlled substance included in Schedule I, II, III, IV, or V of Section 595, chapter 29, Title 19, Virgin Islands Code, or under the combined influence of an intoxicating liquor and such a controlled substance, to drive, operate, or be in actual physical control of, any motor vehicle within the Territory.

20 V.I.C. § 493(a)(1).[9] In order for a defendant to be found guilty beyond a reasonable doubt of "Driving Under the Influence," the People had to prove

---

[9] Subsections 493(a)(1) and 493(a)(2) both include the language "within the Territory" within the enacting clause defining the conduct that is proscribed. Having reviewed the cases from the courts of the Virgin Islands, past and present, addressing driving while intoxicated, this "within the Territory" language has never been acknowledged as an element of the crimes defined in subsection 493(a) of title 20. *E.g., Gov't of the V.I. v. Blake*, 12 V.I. 406, 407 (V.I. Super. Ct. 1975) (the first reported case that is available and addressing exclusion of evidence); *Gov't of the V.I. v. Moses*, 12 V.I. 589, 592-95 (D.V.I. App. Div. 1976) (two appeals from orders dismissing cases for failure to produce testable samples); *Gov't of the V.I. v. Brown*, 571 F.2d 773, 15 V.I. 541 (3d Cir. 1978) (addressing the failure of the Government to charge an actual crime); *Gov't of the V.I. v. Grant*, 19 V.I. 343 (V.I. Super. Ct. 1983) (addressing negligent homicide by motor vehicle and clarifying what it meant to be "under the influence of or affected by intoxicating liquor" under the negligent homicide statute); *Gov't of the V.I. v. Maxey*, 24 V.I. 179, 181-83 (V.I. Super. Ct. 1989) (addressing how a prosecution for driving while intoxicated could be initiated); *Gov't of the V.I. v. Zachry*, 24 V.I. 244 (V.I. Super. Ct. 1989) (reiterating the holding of *Grant*); *Gov't of the V.I. v. Tonge*, 34 V.I. 56, 57 (V.I. Super. Ct. 1996) (the charge asserted that Tonge was "operating a motor vehicle upon a public highway in the territory of the Virgin Islands while under the influence of an intoxicating liquor in violation of the laws of the Virgin Islands"); *Gov't of the V.I. v. Steven (Steven I)*, 962 F. Supp. 682, 36 V.I. 176, 180-81 (D.V.I. App. Div. 1997) (expounding upon the definition of what it means to be under the influence of an intoxicating liquor); *Gov't of the V.I. v. Steven*, 134 F.3d 526, 528, 39 V.I. 466 (3d Cir. 1998) (reiterating the definition of driving under the influence); *Gov't of the V.I. v. Carela*, 44 V.I. 11 (V.I. Super. Ct. 2001) (addressing two evidentiary issues: whether a field sobriety test qualifies as expert or lay testimony and whether a breathalyzer test is competent expert evidence); *Victor v. People*, 57 V.I. 785 (D.V.I. App. Div. 2012) (reiterating the holding of *Grant* and again, the recitation of facts stated that the driving occurred on a public highway); *Rawlins v. People*, 58 V.I. 261, 272-73 (V.I. 2013) (citing *Steven*, 134 F.3d at 528). Further, this Court in its practice of identifying the elements of the crimes defined in title 14 has consistently omitted as an el-

that 1) the defendant, 20 V.I.C. § 493(a)(1) ("any person who . . ."); *see Blyden v. People*, 53 V.I. 637, 664 (V.I. 2010); *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 191, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2009); 2) was under the influence of an intoxicating liquor, controlled substance, or both; 3) drove, operated, or was in actual physical control of 4) a motor vehicle. 20 V.I.C. § 493(a)(1).

### i. Sufficiency of the Evidence: Driving Under the Influence — Element 1 — The Defendant

 The word "person," 20 V.I.C. § 493(a)(1) ("any person who . . ."), unquestionably means a human being. COMPACT AM. DICTIONARY: A CONCISE DICTIONARY OF AM. ENGLISH 920 (1998); BLACK'S LAW DICTIONARY 1324 (10th ed. 2014) (defining "person" as "A human being. — Also termed *natural person*." (emphasis in the original)). Ubiles does not challenge this element on appeal, and we see no obvious inadequacy in the evidence presented at trial. *See Blyden*, 53 V.I. at 664; *Hiibel*, 542 U.S. at 191.

### ii. Sufficiency of the Evidence: Driving Under the Influence — Element 2 — Under the Influence

 The language "under the influence of an intoxicating liquor or a controlled substance included in Schedule I, II, III, IV, or V of Section 595 . . . or under the combined influence of an intoxicating liquor and such a controlled substance" provides three alternative modes of being "under the influence." First, a person can be under the influence of those "controlled substances" identified in section 595 of title 19 of the Virgin Islands Code. Second, a person could be under the influence of an "intoxicating liquor" and a "controlled substance," as indicated by the use of the phrase "or both" when listing the three modes of being "under the influence."

---

ement language relating to the location of the crime within the Virgin Islands. *E.g., Thomas v. People*, 63 V.I. 595, 603 (V.I. 2015) (omitting location as an element of the crime of misprision of a felony, 14 V.I.C. § 13); *Webster v. People*, 60 V.I. 666, 679 (V.I. 2014) (omitting location as an element of the crime of disturbing the peace, 14 V.I.C. § 622(1)); *Cascen v. People*, 60 V.I. 392, 414 (V.I. 2014) (omitting location as an element of the crime of first-degree murder, 14 V.I.C. § 922(a)(1); *Todman v. People*, 59 V.I. 675, 688 (V.I. 2013) (Hodge, C.J., concurring) (omitting location as an element of the crime of unauthorized possession of a firearm, 14 V.I.C. § 2253).

592

■ Third, a person may be under the influence of an "intoxicating liquor." "Liquor" is an "alcoholic beverage made by distillation rather than by fermentation." COMPACT AM. DICTIONARY: A CONCISE DICTIONARY OF AM. ENGLISH 485 (1998). "Intoxicate" is "to make drunk." *Id.* at 440. Accepting this language as it is generally understood, it would appear that the Legislature intended that this crime be limited to intoxication caused by distilled alcoholic beverages. However, this interpretation limiting the applicability of section 595 to intoxication caused by consumption of distilled spirits would undermine the legislative intent of this section, which is traffic and pedestrian safety. *See Gov't of the V.I. v. Zachry*, 24 V.I. 244, 247 (V.I. Super. Ct. 1989) ("[D]riving while intoxicated is forbidden to protect the public from serious death or injury due to a high percentage of alcohol consumption." (citing 20 V.I.C. § 493a)). To distinguish between intoxication caused by alcohol that is distilled as opposed to intoxication caused by alcohol that is fermented is entirely illogical because intoxication is equally dangerous in either form. Such a strict reading of the statute has been rejected by the earliest decisions of the past courts of the Virgin Islands. *See, e.g., Gov't of the V.I. v. Moses*, 12 V.I. 589, 593 (D.V.I. App. Div. 1976) (noting that blood alcohol level is not necessary to prove intoxication); *Gov't of the V.I. v. Brown*, 571 F.2d 773, 777, 15 V.I. 541 (3d Cir. 1978).[10]

---

[10] *See also Gov't of the V.I. v. Steven (Steven II)*, 134 F.3d 526, 528, 39 V.I. 466 (3d Cir. 1998) ("[C]ourts have recognized for over half a century that driving 'under the influence' is commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control." (citations omitted)); *Victor v. People*, 57 V.I. 785, 790 (D.V.I. App. Div. 2012) (unpublished) ("In order to be convicted for driving while intoxicated, the Government must provide proof that the defendant was 'affected by the ingestion of alcohol to a degree beyond mere impairment of ability to operate.' " (citation and internal quotation marks omitted)); *Steven I*, 36 V.I. at 686 ("It has been generally recognized that the term 'driving under the influence' has a common and well-understood meaning . . . ." (citations omitted)); *Tonge*, 34 V.I. at 59 ("The Court agrees with defendant that no definition of the term 'under the influence' appears in the statute, but the court finds that the meaning of the term is older than the enactment by the Virgin Islands Legislature. Where the source of the influence is not the stars nor the divine spirit at communion but an intoxicating liquor, it too appears to have a well understood meaning when used in reference to the driver of a vehicle on the public highways, which meaning courts describe as 'when a person is so affected by an intoxicating liquor as not to possess that clearness of intellect and control of himself that he otherwise would have.' " (citations omitted)); *Gov't of the V.I. v. Grant*, 19 V.I. 343, 347-48 (V.I. Super. Ct. 1983) (addressing negligent homicide by motor vehicle and clarifying what it meant to be "under the influence of or affected by intoxicating liquor" under the negligent homicide statute).

■ In *Rawlins*, 58 V.I. at 272-73 (citing *Steven II*, 134 F.3d at 528), this Court adopted as a definition for "under the influence" to be "driving in a state of intoxication that lessens a person's normal ability for clarity and control." As dictated by section 42 of title 1 of the Virgin Islands Code, where a word or phrase has an accumulated legal meaning prior to its use in a statute, that meaning controls. Here, while the express words may have a narrower definition, their use as a legal expression in language commonly understood is unquestionable, as indicated in the long-interpreted history of this statute. Moreover, there is no reason to reconsider this definition here.

Ubiles does not challenge this element on appeal, and we discern no facial inadequacy in the evidence. *See Blyden*, 53 V.I. at 664.

### iii. Sufficiency of the Evidence: Driving Under the Influence — Element 3 — Motor Vehicle

A " 'motor vehicle' includes all vehicles propelled by power other than muscular, except those running upon rails or tracks, road rollers, tractors, and self-propelled plows and golf carts used solely for recreational purposes on golf courses and not on public roads or highways." 20 V.I.C. § 101. Section 101 excludes from this definition the following: 1) vehicles running upon rails or tracks, 2) road rollers, 3) tractors, 4) self-propelled plows, and 5) golf carts not in use on public roads or highways.

■ When a statutory definition is comprehensive in itself and does not require reference to any exceptions, the exceptions are usually considered an affirmative defense, and need not be proved by the prosecution in order to affirm a conviction for insufficient evidence. *United States v. Cook*, 84 U.S. (17 Wall.) 168, 173, 21 L. Ed. 538 (1872). The language and structure of section 101 explicitly indicate that there is one definition of a "motor vehicle," which is any vehicle propelled by power other than muscular. The five exceptions do nothing to clarify this understanding; they are all vehicles propelled by power other than muscular. Instead, they simply remove from the ambit of the statute conduct involving certain vehicles. Further, a defendant, as the person who was operating the vehicle involved in the case, has the same access to this evidence as the prosecution.

Therefore, this element only requires proof that the vehicle in question was propelled by power other than muscular. If a defendant was operating any of the types of vehicles listed in the five exceptions, it was his

obligation to raise this defense, either through cross-examination or presenting evidence confirming the application of the exception.[11]

Ubiles does not challenge this element on appeal, and we see no apparent inadequacy in the People's proof. *See Blyden*, 53 V.I. at 664.

### iv. Sufficiency of the Evidence: Driving Under the Influence — Element 4 — Actual Physical Control

 Ubiles challenges the element of "drove, operated or was in actual physical control" of a motor vehicle in each charge, arguing a failure of proof. The words in a statute must be given their commonly understood meaning unless they are defined in the statute or have a specific legal or technical meaning. 1 V.I.C. § 42. To drive is "[t]o guide, control, or direct (a vehicle)" or "[t]o operate . . . a vehicle." COMPACT AM. DICTIONARY at 260. To operate is "[t]o control the functioning of [a vehicle]." *Id.* at 584.

The terminology of "to be in actual physical control" of the vehicle is less readily defined in the context of the statute. To be in control is to have the "[p]ower to manage, direct, or dominate." *Id.* at 190. To be in actual physical control of the vehicle, then, is to have the present physical power to control the function of the motor vehicle. This would require 1) that the person have the present ability to readily move the vehicle by use of its power source and 2) actions by that person that demonstrate the intent to engage the power source needed to move the vehicle (e.g., by placing the key in the ignition).

If the Legislature had intended to require the defendant's asportation of the vehicle, the expansive, catchall language of "actual physical control"

---

[11] Despite the lack of any statutory language even suggesting that the act of driving, operating, or controlling a motor vehicle must occur on a public road or highway, both counts included this language. A public road includes "all roads, highways and parking areas open for use by the public." 20 V.I.C. § 101. The "over and along the public highways" language in the charges against Ubiles appears to emanate from the golf cart exception to the definition of a motor vehicle. 20 V.I.C. § 101; *e.g., Tonge*, 34 V.I. at 57 (the charge asserted that the defendant was "operating a motor vehicle upon a public highway in the territory of the Virgin Islands while under the influence of an intoxicating liquor in violation of the laws of the Virgin Islands"); *see also Steven I*, 36 V.I. at 176 (without citation to any authority, the language in the charge of "on the public highways" is discussed as if it is contained within the statutory text). Accordingly, the "over and along the public highways" language is surplusage and is not an element of the crimes of Driving Under the Influence or Driving With a Prohibited Blood Alcohol Content; therefore, the prosecution was not required to prove this factor beyond a reasonable doubt.

would not have been used. To "drive" has a commonly understood meaning, as does the word "operate." When it is stated that someone was driving a vehicle, this statement conjures a very specific image of conduct that is the same as when one says that a person was operating a motor vehicle. However, being informed that someone was in actual physical control of a vehicle casts a broader net and encompasses conduct that would not be described as driving or operating a vehicle.

The use of the modifiers "actual" and "physical" when describing "control of the motor vehicle" also indicates that the Legislature rejected any attempt to criminalize innocent conduct. Again, to assert that a person was in control of a vehicle is expansive and could readily be understood to include ownership of the vehicle, leasing a vehicle, storing a vehicle in a storage unit for another person, and a whole plethora of other actions that indicate some form of authority over the vehicle. However, when modifying "control" with the words "actual" and "physical," a very clear image of a person present, in the vehicle, taking some perceptible physical action to "control" the vehicle arises. *E.g., State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993).

In *United States v. Stephenson*, No. 7:07-PO-247, 2007 U.S. Dist. LEXIS 60518, at *5 (W.D. Va. Aug. 17, 2007), the court considered the appropriate interpretation of the term "actual physical control" as used in a regulation prohibiting drunk driving. That regulation provided that

> (a) [o]perating or being in actual physical control of a motor vehicle is prohibited while:
>
> > (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
> >
> > (2) The alcohol concentration in the operator's blood or breath is .08 grams or more of alcohol per 100 milliliters of blood or .08 grams or more of alcohol per 210 liters of breath . . . .

*Id.* (quoting 36 C.F.R. § 4.23(a)). The court explained that being in actual physical control of a motor vehicle "draws within its purview conduct more expansive than conduct that would be encompassed within the word operating." *Id.* at *8 (citation and internal quotation marks omitted). A person in the driver's seat with the key in the ignition is an "operator" within the meaning of the regulation. *Id.* It further explained that

> Ordinary experience tells us that one in a drunken stupor in the driver's seat of a vehicle is likely to arouse abruptly, engage the motive power of the vehicle and roar away imperiling the lives of innocent citizens. This sequence of events easily can occur where, as here, a drunk is sitting behind the steering wheel of a motor vehicle alone, with the key already in the ignition. From a mechanical standpoint, the vehicle is "capable of being immediately placed in motion to become a menace to the public, and to its drunken operator."

*Id.* at \*14 (citation omitted).

█ Irrefutably, it was proved beyond a reasonable doubt that Ubiles was in actual physical control of the vehicle he had been operating. *See, e.g., City of Fargo v. Theusch*, 462 N.W.2d 162, 163-64 (N.D. 1990); *State v. Conley*, 754 P.2d 232, 236 (Alaska 1988); *Lopez v. Schwendiman*, 720 P.2d 778, 781 (Utah 1986); *City of Cincinnati v. Kelley*, 47 Ohio St. 2d 94, 351 N.E.2d 85, 87-88 (1976); *State v. Vermuele*, 160 Ariz. 295, 772 P.2d 1148, 1150 (1989). Whatever may have transpired prior to Officer Charles' arrival, Ubiles occupied the driver's seat of the vehicle and inserted the key into the ignition of the vehicle in the officer's presence. The officer then opened the passenger door to turn the engine off and removed the keys from the ignition. Ubiles' actions were proof beyond a reasonable doubt that Ubiles was in actual physical control of the vehicle, and further support his conviction for Driving Under the Influence.[12]

### 2. Sufficiency of the Evidence: Driving With a Prohibited Blood Alcohol Content

█ Subsection (a)(2) of section 493 of title 20 of the Virgin Islands Code provides:

> It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive, operate, or be in actual physical control of, any motor vehicle within the Territory.

20 V.I.C. § 493(a)(2). To prove the crime of "Driving With a Prohibited

---

[12] Alternatively, Ubiles admitted he was driving a motor vehicle. Ubiles stated that he was coming down the hill when the other driver hit him, "I coming down the corner, he hit me." A reasonable jury could have interpreted this statement to be Ubiles' admission that he was driving the vehicle in question.

Blood Alcohol Content", the following elements must be established beyond a reasonable doubt: 1) a defendant, 20 V.I.C. § 493(a)(2) ("any person who . . ."); *see Blyden*, 53 V.I. at 664; *Hiibel*, 542 U.S. at 191; 2) having a blood-alcohol content of .08 or more by weight 3) drove, operated, or was in actual physical control of 4) a motor vehicle. As already discussed above, Ubiles does not challenge the sufficiency of the proof of elements 1 and 4, and we see no obvious insufficiency. *See Blyden*, 53 V.I. at 664. The second element, prohibited blood alcohol content, was incontestably established through the blood alcohol breath test results. As discussed previously, there was sufficient evidence establishing Ubiles' actual physical control of the motor vehicle. Because there was sufficient evidence upon which a jury could have concluded beyond a reasonable doubt that Ubiles' blood alcohol level was higher than the prescribed limit, his conviction for Driving With a Prohibited Blood Alcohol Content is affirmed.

## V. CONCLUSION

By allowing the admission of the breath test results without an objection and by introducing those results into evidence himself as a defense exhibit, Ubiles waived any objection he otherwise may have had to their admission, thus precluding consideration of his objection to them on appeal. Further, because there was sufficient evidence, taken in the light most favorable to the jury verdict, establishing beyond a reasonable doubt that Ubiles was under the influence with a prohibited blood alcohol content while in actual physical control of the vehicle at issue, the Court affirms both of his convictions.

HODGE, *Chief Justice*, concurring.

I agree with the majority that the People introduced sufficient evidence to sustain Ubiles's convictions. I write separately because I would reach the merits of Ubiles's Confrontation Clause challenge, but conclude that his constitutional rights were not violated when the People failed to call Lt. Jarvis as a witness.

## I. WAIVER

As a threshold matter, it is well-established that waiver is a non-jurisdictional, judicially-created doctrine, and thus an appellate court may "exercise[ ] its discretion to bypass [a] relatively complex waiver issue and resolve [the] appeal on the merits" if the issue is simple and fails on the merits. *United States v. Black*, 773 F.3d 1113, 1115 n.2 (10th Cir.

2014); *Lemke v. Ryan*, 719 F.3d 1093, 1098-99 (9th Cir. 2013); *United States v. Caruthers*, 458 F.3d 459, 472 & n.6 (6th Cir. 2006); *United States v. Cupit*, 169 F.3d 536, 539 (8th Cir. 1999). Although the majority opinion devotes eight pages to addressing whether Ubiles fairly presented the Confrontation Clause issue to the Superior Court, Part II of this concurrence rejects Ubiles's argument on the merits in a mere two paragraphs. Consequently, this appeal represents the textbook example of a case where waiver need not be addressed, since resolving the difficult waiver issue will squander more judicial resources than simply assuming, without deciding, that the issue has been preserved, and then rejecting it on the merits.

Nevertheless, I would conclude that Ubiles did not waive his Confrontation Clause argument. This Court has repeatedly distinguished between forfeiture and waiver, in that "[w]hen a legal rule has been waived, an appeal based upon the nonadherence to that legal principle is precluded," but "[i]f . . . the correct application of the rule merely was forfeited, then an appellate court may nevertheless review for plain error." *Murrell v. People*, 54 V.I. 338, 361-362 (V.I. 2010) (internal quotation marks omitted). This Court has repeatedly held that to constitute a waiver rather than a mere forfeiture, either (1) the defendant must personally waive the right after being informed of its existence, or (2) the defendant's counsel has invited the error on behalf of the defendant if counsel actively and unambiguously consents to the waiver, and the right is not so fundamental as to require an informed voluntary waiver from the defendant personally. *See Williams v. People*, 59 V.I. 1024, 1033 (V.I. 2013); *Francis v. People*, 57 V.I. 201, 216 n.10 (V.I. 2012); *Fontaine v. People*, 56 V.I. 571, 583-84 (V.I. 2012); *Murrell*, 54 V.I. at 361-62; *Latalladi v. People*, 51 V.I. 137, 143-44 (V.I. 2009).

In this case, the majority recognizes that Ubiles did not personally waive the right at issue, but maintains that his counsel effectuated a waiver by stating that he had no objection to the admissibility of the breathalyzer results. But until now, this Court has only found that an attorney has waived a right on behalf of a client in cases where counsel actively induced or encouraged the Superior Court to take a specified action. *See, e.g., Williams*, 59 V.I. at 1035 (counsel had "not only endorsed application of [the statute]" but "propos[ed] that the Superior Court take [an] action" which "the Superior Court fully adopted"); *Powell v. People*, 59 V.I. 444, 464 (V.I. 2013) (counsel "stipulated to the

admission of what are arguably the most gruesome of the photos");
*Fontaine*, 56 V.I. at 583 (waiver of review of "erroneous jury instructions
proposed by a defendant's counsel"); *Duggins*, 56 V.I. at 308-09
("counsel invited the error by eliciting the testimony in the first place");
*Latalladi*, 51 V.I. at 143-44 (counsel waived error when "not only failed
to object . . . but actually suggested that the judge read the statutory
definition of forgery again"). Importantly, courts have consistently found
that an attorney simply stating that there is no objection — without more
— is not sufficient for a finding of waiver. *See United States v. Brown*, 849
F.3d 87, 90 n.6 (3d Cir. 2017) (counsel did not waive to complain about
empanelling of dual juries when counsel advised trial judge that there
were no objections); *State v. Myles*, 479 S.W.3d 649, 656 (Mo. Ct. App.
2015) (counsel did not waive review of jury instructions by stating she
had no objection); *Felker v. State*, 172 Ga. App. 492, 323 S.E.2d 817,
820-21 (1984) (counsel did not waive review of admission of crime lab
report by stating that he had no objection); *United States v. Carter*, 1
C.M.A. 108, 2 C.M.R. 14, 19-20 (CMA 1952) (counsel's statement that
he had no objection to the evidence was not a stipulation). In other words,
courts have interpreted an attorney saying that there is no objection as
equivalent to the attorney failing to say anything at all, which this Court
has already held will not establish a waiver. *Williams*, 59 V.I. at 1033. But
even if this Court were to reject these authorities and hold that an attorney
may waive an issue simply by stating that there is no objection, I would
conclude that Ubiles's counsel did not do so in this case because whether
a piece of evidence violates the Confrontation Clause is a distinct
question from whether the evidence is admissible. The majority correctly
recognizes that the "fairly presented" standard under Supreme Court Rule
4(h) is a low threshold. Even though Ubiles clearly raised this issue before
the Superior Court as part of his oral motion for judgment of acquittal at
the close of the People's case, the majority determines that even this low
threshold was not met because he failed to object to the admissibility of
the breathalyzer results when the People offered it into evidence.
However, it is well-established that evidence may be admissible under the
rules of evidence, yet violate the Confrontation Clause if it is presented in
an impermissible way. *See, e.g., Melendez-Diaz v. Massachusetts*, 557
U.S. 305, 311, 329, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (holding
admission of "certificates of analysis" violated the confrontation clause
when admitted in the absence of the forensic analyst who produced them,

even though the certificates were admissible under state rules of evidence); *United States v. Jimenez*, 513 F.3d 62, 76-77 (3d Cir. 2008); *accord*, Jeffrey L. Fisher, *Crawford v. Washington: The Next Ten Years*, 113 MICH. L. REV. FIRST IMPRESSIONS 9, 10 (2014) ("[T]he Confrontation Clause is not a rule of evidence but rather one of criminal procedure.").

Because the *admission* of evidence is a separate issue from whether the *presentation* of the evidence violates the Confrontation Clause,[1] a defendant's failure to object to the admission of evidence does not result in waiver of a claim that the way the evidence was presented violated the Confrontation Clause.[2] *See D.G. v. State*, 76 So. 3d 852 (Ala. Crim. App. 2011) (rejecting argument that defendant invited error by stipulating to admission of videotaped testimony and then objecting on Confrontation Clause grounds after the close of all evidence as part of motion for acquittal); *see also People v. Osio*, 2005 Cal. App. Unpub. LEXIS 4573, at *19 n.11 (Cal. Ct. App. May 25, 2005) (unpublished) (failure to object to admission of victim's statement did not cause Confrontation Clause issue to be invited error); *cf. People ex rel R.A.S*, 111 P.3d 487, 491 (Colo. Ct. App. 2004) (stipulation that witness is incompetent to testify does not establish waiver to right of confrontation). And while the best practice would certainly have been for Ubiles to object to the breathalyzer report and related testimony on Confrontation Clause grounds at the time of admission, Ubiles did not err by waiting to raise the challenge until after the People rested its case, given that the People could still have cured the

---

[1] For this reason, the case law relied upon by the majority in its waiver analysis is inapposite, in that none involve the presentation of evidence under the Confrontation Clause.

[2] In *Melendez-Diaz*, the United States Supreme Court — in dicta — stated that "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence." 557 U.S. at 313-14 n.3. Because *Melendez-Diaz* itself concerned a situation in which evidence was clearly admissible under a state rule of evidence but not presentable under the Confrontation Clause, I interpret this dicta as referring only to a failure to object on Confrontation Clause grounds, rather than failing to object — or even stipulating — on admissibility grounds. To hold otherwise would waste judicial resources by requiring parties to make frivolous objections to the admissibility of evidence for the sole purpose of pre-serving a non-frivolous Confrontation Clause issue for appellate review. *See NLRB v. Miller Brewing Co.*, 408 F.2d 12, 16 (9th Cir. 1969) ("We know of no theory of waiver which re-quires the doing of a futile act to preserve a right not dependent on and only tangentially related to the act."); *Armour & Co. v. United States*, 402 F.2d 712, 724 n.14 (7th Cir. 1968) ("[I]t is not required that parties engage in the futile act of objecting to the admission of evidence in order to preserve the right on review to urge that the agency's order is not based on substantial evidence in the record as a whole.").

Confrontation Clause error — if any — by calling Lt. Jarvis as a prosecution witness *after* the breathalyzer report was admitted into evidence through Office Charles's testimony.[3] *United States v. Clark*, 480 F.2d 1249, 1251 (5th Cir. 1973); *People v. Hughey*, 194 Cal. App. 3d 1383, 240 Cal. Rptr. 269, 273 (1987); *see also Parker v. State*, 779 P.2d 1245, 1251 (Ariz. Ct. App. 1989) (holding that defense counsel is not required to raise Confrontation Clause challenge at the time the out-of-court statement is admitted into evidence, since the prosecution can call the witness at any time prior to the end of its case). Therefore, I would conclude that Ubiles fairly presented this issue to the Superior Court.

## II. MERITS

Since I disagree with the majority that Ubiles waived his Confrontation Clause argument, I would proceed to consider it on the merits. Whether the People presented evidence in violation of the Confrontation Clause is a pure question of law for which this Court's review is plenary. *Rawlins v. People*, 61 V.I. 593, 606 (V.I. 2014). The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. However, "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *United States v. Owens*, 484 U.S. 554, 559-60, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)) (emphasis in original). In other words, "[w]hen a witness 'is present at trial and subject to unrestricted cross-examination . . . the traditional protections of the oath, cross-examination,

---

[3] Unlike many jurisdictions, the Rules of the Superior Court do not require that the prosecution provide the defendant with a witness list. Moreover, to the extent the Federal Rules of Criminal Procedure apply to a criminal proceeding in the Superior Court pursuant to Superior Court Rule 7 — a proposition which this Court has strongly questioned, *see Estick v. People*, 62 V.I. 604, 619 n.7 (V.I. 2015) —it is worth noting that the Federal Rules also do not contain such a requirement in non-capital cases. *See United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988); *United States v. Angelini*, 607 F.2d 1305, 1308-09 (9th Cir. 1979); *United States v. Apostolopuos*, 2005 U.S. Dist. LEXIS 23005, at *13 (S.D.N.Y. Oct. 6, 2005) (unpublished). For this reason, it is also immaterial that Ubiles relied on the breathalyzer report during his cross-examination of Officer Charles, given that the People introduced the report during its direct examination of Officer Charles and the People had not yet rested its case, thus preserving the possibility that any Confrontation Clause violation could be cured.

and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Williams v. People*, 56 V.I. 821, 829 (V.I. 2012) (quoting *Owens*, 484 U.S. at 560).

While Ubiles relies on the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 564 U.S. 647, 657-58, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), where the Supreme Court held that one laboratory analyst may not testify to a test performed by another, non-testifying analyst, in this case Officer Charles testified that she personally administered the standardized field sobriety test, as well as the breathalyzer test, on Ubiles. Significantly, information relating to the calibration or accuracy of a breathalyzer machine was not needed for the People to establish any element of the offenses with which Ubiles was charged; rather, this information is relevant solely to Ubiles's challenge to the weight of the otherwise admissible evidence introduced by the People. *Accord, Melendez-Diaz*, 557 U.S. at 311 n.1 ("[I]t is not the case, that anyone whose testimony may be relevant to establishing . . . accuracy of the testing device, must appear in person as part of the prosecution's case."). Consequently, it was Ubiles — and not the People — who bore the burden to introduce any evidence calculated to cast doubt on the reliability of the breathalyzer test, including calling Lt. Jarvis as a witness. *See, e.g., State v. Maga*, 166 N.H. 279, 96 A.3d 934, 940 (2014); *Commonwealth v. Dyarman*, 621 Pa. 88, 73 A.3d 565, 569-70 (2013), *cert. denied*, 134 S. Ct. 948, 187 L. Ed. 2d 785 (2014); *Matthies v. State*, 85 So. 3d 838, 843-44 (Miss. 2012), *cert. denied*, 568 U.S. 885, 133 S. Ct. 317, 184 L. Ed. 2d 154 (2012); *accord, Speers v. State*, 999 N.E.2d 850, 855 (Ind. 2013) ("[T]here is no Confrontation Clause violation where the State introduces evidence and links in the chain of custody are missing . . . . The significance of any gap created by the absence of [the witness] was a matter for the jury to weigh."), *cert. denied*, 134 S. Ct. 2299, 189 L. Ed. 2d 183 (2014). Accordingly, I would nevertheless affirm Ubiles's convictions, notwithstanding my conclusion that he did not waive his Confrontation Clause argument.