

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2005

# Govt of VI v. Olinsky

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2052

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Govt of VI v. Olinsky" (2005). *2005 Decisions.* Paper 1562.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1562

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 04-2052


GOVERNMENT OF THE VIRGIN ISLANDS

v.

JOHN T. OLINSKY,

Appellant


On Appeal from the District Court
of the Virgin Islands, Appellate Division
(D.C. Crim. App. No. 2001-0110)
Honorable Raymond L. Finch, Chief Judge
Honorable Thomas K. Moore, District Judge
Honorable Patricia D. Steele, Judge of the Territorial Court
of the Virgin Islands (sitting by designation)


Argued December 16, 2004

BEFORE: SLOVITER, FUENTES and GREENBERG, Circuit Judges

(Filed:      January 14, 2005)


Arturo R. Watlington, Jr. (argued)
#3B Store Gronne Gade
P.O. Box 261
Charlotte Amalie
St. Thomas, USVI  00804
Attorney for Appellant

Iver A. Stridiron
Attorney General
Elliott M. Davis
Solicitor General
Maureen Phelan (argued)
Assistant Attorney General
Office of Attorney General of the
Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
Charlotte Amalie
St. Thomas, USVI 00802

Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, <u>Circuit</u> <u>Judge</u>.

John T. Olinsky appeals from an order of the District Court of the Virgin Islands, Appellate Division, affirming his conviction under 14 V.I. Code Ann. § 2253(a) (Supp. 2004) for possession of a firearm without a license. Because we agree with the district court's reasoning and result, we will affirm.

After a bench trial which dealt both with Fourth Amendment and substantive issues, the territorial court issued a judgment and commitment dated November 20, 2000, reflecting its finding convicting Olinsky. Olinsky appealed from this judgment to the district court which affirmed, entering its order on March 30, 2004. Olinsky timely filed a notice of appeal to this court. The district court had jurisdiction to review the judgment

of the territorial court pursuant to 48 U.S.C. § 1613a(a) and we have jurisdiction under 48 U.S.C. § 1613a(c).

On this appeal Olinsky challenges only the district court's determination that the territorial court correctly denied his motion to suppress the firearm the police collected at the time of his arrest. Olinsky argues that the police obtained the firearm as the result of an unreasonable search and seizure in violation of the Fourth Amendment. In reviewing a denial of a motion to suppress, we accept the factual findings of the territorial court unless they are clearly erroneous and we review the legal determinations of both the territorial court and the district court de novo. See United States v. Fulani, 368 F.3d 351, 352 (3d Cir. 2004); Tyler v. Armstrong, 365 F.3d 204, 208 (3d Cir. 2004).

The territorial court found that the police responded to an early morning 911 call on May 27, 2000, from an identified caller who reported that there was a man with a gun near a screen shop in a small shopping center on St. Thomas. The caller indicated that the man was a white Caucasian male wearing colored pants or shorts and a T-shirt or top and also stated, as found by the territorial court, that the police should be careful because the man "had cranked the weapon or cocked the weapon." Tr. at 317.[1] The territorial court found that the police responded to this call and arrived at the shopping center in the area of the screen shop, where they noticed that the door to the shop was ajar or opened. The police then observed Olinsky in an alley. According to the territorial court's findings

---

[1]Because Olinsky did not number all of the pages of the appendix, "Tr." refers to the page numbers of the transcript of the bench trial.

announced at the conclusion of the bench trial, the police "saw [Olinsky] take out from the front of his waist, a gun. He pivoted after they told him to freeze, and he then placed the firearm in the bed of a truck that he was standing next to." Tr. at 318. Also, in its oral decision denying the motion to suppress, the territorial court described that "when the police told [Olinsky] to freeze, before doing so, [he took] a gun out of his waist area and as the officers described, made a pivotal flirtive [sic] movement by taking the gun out of the area in his front and placing it into the bed of a truck." Tr. at 159. The police officers then approached Olinsky and questioned him as to whether he had a license for the firearm. After establishing that Olinsky did not have a license for the firearm, the officers arrested him. Olinsky presented a different, more benign, version of these facts to the territorial court, but the court explicitly rejected Olinsky's testimony, finding him not credible. In any event, Olinsky does not claim that he had a gun license so that any dispute of facts does not implicate the fundamental question in this case, i.e, did Olinsky possess an unlicensed gun?

On appeal, Olinsky does not make a substantial argument that we should determine that the territorial court's factual findings were clearly erroneous and, as we see no reason to disturb them, we accept them. Olinsky does argue, however, that the territorial court should have suppressed the use of the firearm as evidence because the police obtained it as a result of an unreasonable search and seizure. In this regard he contends that the Supreme Court's decision in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), and our

4

decision in United States v. Ubiles, 224 F.3d 213 (3d Cir. 2000), govern his case. On his initial appeal the district court rejected this argument, concluding that Terry and Ubiles do not apply and that the Supreme Court's opinion in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547 (1991), is controlling.

We agree with the district court that the Supreme Court's decision in Hodari D. is controlling. In Hodari D. police officers on patrol sparked the flight of several youths with their approach. During the officers' pursuit of one of the youths, he tossed away an object that police later identified as crack cocaine. The youth moved to suppress the crack cocaine as the fruit of an illegal seizure. Id. at 622-23, 111 S.Ct. at 1549. The Supreme Court held that there is not a seizure for Fourth Amendment purposes if a subject does not yield to a show of police authority. Id. at 626, 111 S.Ct. at 1550. In Hodari D. the Court concluded that the fleeing subject abandoned the material before he submitted to the show of authority and that in those circumstances the police did not recover it as the fruit of a seizure implicating the Fourth Amendment. Id. at 629, 111 S.Ct. at 1552.

In this case under the facts the territorial court found, the district court correctly concluded that Olinsky abandoned the firearm before he submitted to the police officers' show of authority. The territorial court found that Olinsky "pivoted after [the police] told him to freeze, and he then placed the firearm in the bed of a truck." Tr. at 318. While Olinsky's flight was less dramatic than that of the subject in Hodari D., his own act

produced the firearm and that act was in direct disregard of the police order to "freeze." Thus, at the time that the firearm came into the officers' plain view, there had not been a seizure and the Fourth Amendment had not been implicated. In these circumstances, a Fourth Amendment reasonable suspicion analysis pursuant to Terry and Ubiles is not applicable.[2]

Therefore, we will affirm the order of the district court entered March 30, 2004, affirming the judgment of the territorial court convicting Olinsky.

———————

[2]We note that even if a Fourth Amendment reasonable suspicion analysis applied here, given the totality of the circumstances, we would conclude that this case is distinguishable from Ubiles and that the police had reasonable suspicion to stop Olinsky.